NOT DESIGNATED FOR PUBLICATION

No. 115,226

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOHN JAMES BASKAS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed March 10, 2017. Reversed and remanded with directions.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Michael G. Jones*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., ATCHESON and BRUNS, JJ.


*Per Curiam*:  The Leavenworth County District Court held that the good-faith exception to the exclusionary rule salvaged the search of Defendant John James Baskas' residence—a search that yielded compelling evidence of an enterprise for growing and processing marijuana run in the house. Baskas has appealed the ruling and the concomitant denial of his motion to suppress that evidence. We reverse because the search warrant and supporting affidavit were so deficient that a reasonable, well-trained law enforcement officer would have recognized those deficiencies even though a judge had signed the warrant, thereby negating the good-faith exception. We remand with

directions that the district court set aside Baskas' convictions and sentence, grant his motion to suppress, and otherwise proceed in a manner consistent with this decision.

This is Baskas' second trip to our court in this case. Baskas initially appealed in 2014 after the district court denied his motion to suppress and he then went to trial. *State v. Baskas*, No. 109,760, 2014 WL 3843088 (Kan. App. 2014) (unpublished opinion), *rev. denied* 302 Kan. 1012 (2015) (*Baskas I*). The jury convicted Baskas of three drug- related felonies, including possession of marijuana with an intent to distribute. In *Baskas I*, the panel held, first, that the district court erred in assessing the adequacy of the information in the search warrant application and, second, that a judge could not have had a substantial basis for concluding the affidavit established probable cause. 2014 WL 3843088, at *5-8; see *State v. Powell*, 299 Kan. 690, 695, 325 P.3d 1162 (2014) (when reviewing adequacy of affidavit and search warrant, court asks whether issuing judge had "a substantial basis" for finding probable cause). The search warrant, therefore, should not have been issued, and the resulting search violated Baskas' rights protected in the Fourth Amendment to the United States Constitution.

Typically, the State cannot use items seized in violation of a person's Fourth Amendment rights as evidence in a criminal prosecution of that person. That's the exclusionary rule. See *State v. Althaus*, 49 Kan. App. 2d 210, 219, 305 P.3d 716 (2013). But in the original suppression hearing, the county attorney argued even if the search warrant had been improperly issued, the law enforcement officers came within the good-faith exception to the exclusionary rule, so the drugs, contraband, and other evidence seized from Baskas' house still could be used as evidence. The district court did not rule on the applicability of the good-faith exception since it found the search warrant to be constitutionally sufficient. Because the panel in *Baskas I* disagreed with that conclusion and the county attorney's argument for the good-faith exception remained unresolved, the panel remanded to the district court for the narrow purpose of deciding that point. *Baskas*, 2014 WL 3843088, at *9.

The good-faith exception—as the name suggests—overrides the exclusionary rule should law enforcement officers reasonably rely on a search warrant signed by a judge even when the warrant is later determined to be constitutionally inadequate. *United States v. Leon*, 468 U.S. 897, 913, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984); *State v. Daniel*, 291 Kan. 490, 492, 242 P.3d 1186 (2010). The exception, then, encourages law enforcement officers to seek judicially approved search warrants and rewards them for having done so. *Leon*, 468 U.S. at 913-14, 920-21. In fashioning the good-faith exception, the United States Supreme Court, nonetheless, recognized a limited set of particularly troubling circumstances in which it should not apply. *Leon*, 468 U.S. at 922-23. The situations arise when: (1) the judicial officer issuing the warrant has been misled by information the author of the affidavit knew or should have known to be false; (2) the judicial officer has "wholly abandoned" the role of a detached and neutral official and has merely rubberstamped the request for a warrant; (3) the affidavit is "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'"; or (4) the warrant itself is patently deficient, for example, in describing with particularity the place to be searched or the items to be seized. 468 U.S. at 923; see also *Althaus*, 49 Kan. App. 2d 210, Syl. ¶ 6.

On remand from *Baskas I*, the district court heard argument from lawyers for both sides but did not receive any additional evidence. The parties agreed the warrant was not deficient in describing the place to be searched or the items to be seized. Baskas submitted each of the other three grounds applied to negate the good-faith exception. The district court took the issue under advisement and issued a short written decision finding no basis to reject the good-faith exception. In short, the district court again denied Baskas' motion to suppress; this time because the good-faith exception overrode the exclusionary rule. Baskas has appealed that ruling.

3

On appeal, Baskas has reprised his arguments for each of the three grounds on which the good-faith exception should be discarded. We consider only the insufficiency of the probable cause affidavit and find that point dispositive, since a reasonable law enforcement officer should have recognized its gross inadequacy. *Powell*, 299 Kan. at 699 (judge's error in issuing warrant so obvious reasonable law enforcement officer would have recognized error). The issue requires us to examine the content of the affidavit measured against what that hypothetical officer would understand about basic search and seizure principles. The exercise entails a question of law, so we owe no particular deference to the district court's assessment. *Althaus*, 49 Kan. App. 2d at 217.

For purposes of the analysis, we presume a "well trained" law enforcement officer "hav[ing] a reasonable knowledge of what the law prohibits." *Leon*, 468 U.S. at 919 n.20, 923; see *Althaus*, 49 Kan. App. 2d at 222. The exemplar should be an officer conversant in the broad precepts implicated in a Fourth Amendment search and, thus, able to recognize an obviously deficient warrant. *Althaus*, 49 Kan. App. 2d at 222; *United States v. Roach*, 582 F.3d 1192, 1204 (10th Cir. 2009). Good faith is likewise measured by how a "reasonable" law enforcement officer would view the circumstances. An officer poorly versed on basic search and seizure requirements may not rely on the good-faith exception solely because he or she subjectively believes a judge acted properly in signing a warrant. *Leon*, 468 U.S. at 919-20 & n.20.

An affidavit submitted in support of a request for a search warrant must establish "probable cause"—a reasoned or fair probability—that specifically described contraband or evidence of a crime may be found at a specifically identified place. *Ornelas v. United States*, 517 U.S. 690, 696, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996) ("[P]robable cause to search . . . exist[s] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found."); *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983) (search warrant may issue when the supporting affidavit establishes "a fair probability

that contraband or evidence of a crime will be found in a particular place"); *State v. Hicks*, 282 Kan. 599, 612, 147 P.3d 1076 (2006). In other words, the factual representations in the application must be tied to the location to be searched in a way that shows contraband or evidence probably will be found there. *Hicks*, 282 Kan. at 617; *State v. Malone*, 50 Kan. App. 2d 167, Syl. ¶ 3, 323 P.3d 188, *rev. denied* 300 Kan. 1106 (2014). This concept effectively prohibits general warrants authorizing government agents to search anywhere at any time and reflects a fundamental principle embodied in the Fourth Amendment. *State v. Dugan*, 47 Kan. App. 2d 582, 588-89, 276 P.3d 819 (2012). At the same time, however, the general concept that the factual representations presented to a judge to get a search warrant have to demonstrate a reasonable basis to believe what is being sought may be found at the place to be searched is hardly a difficult one to grasp. That is the whole point of the application.

The application submitted to the district court in support of the search warrant for Baskas' home consisted of three paragraphs. The last paragraph recited the training of the officer from the Leavenworth Police Department signing the affidavit supporting the application for the search warrant. The two paragraphs outlining the factual bases to justify the search were set out in *Baskas I* this way:

> "'On [February 4, 2011,] Sgt. Vogel [met] with Cameo Giles. Cameo Giles had been federally indicted for participating in a crack cocaine distribution ring that occurred in the city [of] Leavenworth. Cameo agreed to cooperate and provided information regarding other illegal narcotics trafficking in Leavenworth. Cameo Giles told Sgt. Vogel that individuals were possibly selling marijuana from a residence at the corner of North 12th St. and Cheyenne. Cameo Giles also stated that an older couple that lived there were Phillip Haack's grandparents. Cameo Giles said that he observed the older male buying a large quantity of swisher sweets. Sgt. Vogel knew based on training and experience that cigarillos such as swisher sweets are often used in the consumption of Marijuana.

> "'On [June 15, 2011,] Officer J. Gaines conducted a trash pull on 1104 North 12th St. Officer Gaines removed several bags of trash placed at the curbside for disposal at 1104 North 12th St. Officer J. Gaines found multiple baggies with missing corners and multiple

5

baggies that had knots in them. Officer J. Gaines knew from training and experience that narcotic dealers will package [their] narcotics in sandwich baggie corners for ease of sale. The remaining portion of the baggies are torn or cut off and discarded. Also found were multiple packages of cigars and rolling papers and a large amount of loose leaf tobacco. Officer J. Gaines knew from training and experience that marijuana users will empty and discard the tobacco from a cigar and then refill the cigar with narcotics to be smoked. Also located in the trash was green leafy vegetation and stems. Officer J. Gaines completed a field test kit on a portion of the green leafy vegetation. That test had a presumptive positive result for Marijuana.'" *Baskas*, 2014 WL 3843088, at *5.

We review those bases to determine whether a well-trained law enforcement officer would find them so lacking in probable cause that he or she would recognize the district court's error in issuing the search warrant.

The first paragraph lends virtually nothing to the probable cause determination the district court had to make when it reviewed the affidavit on June 17, 2011. About 4 months earlier, Cameo Giles, an accused drug trafficker, told officers that one or more individuals were selling marijuana from "a residence" at the corner of two streets in Leavenworth. Assuming a normal intersection, there could be four or more residences satisfying that portion of the application—one on each corner. If there were a duplex or another multifamily dwelling on a corner, the number of residences would be greater. We doubt a judge considering the application could take judicial notice of the intersection or rely on his or her personal knowledge of the location. See K.S.A. 60-409; *United States v. Sorrells*, 714 F.2d 1522, 1527 n.6 (11th Cir. 1983) (district court judge cannot "enlist his or her own personal knowledge" to supplement and salvage an otherwise defective search warrant). Doing so would be inconsistent with assessing the constitutional sufficiency of the application and the resulting warrant from the four corners of the documents. *Malone*, 50 Kan. App. 2d at 172; *Crowe v. County of San Diego*, 608 F.3d 406, 434 (9th Cir. 2010); *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). Giles' tip does not describe a location with sufficient specificity to support a search warrant.

6

In addition, Giles appeared to base his conclusion on seeing one of the residents buy "a large quantity" of cigarillos, a product that some people use illicitly by removing a portion of the tobacco and replacing it with marijuana before they light up. But cigarillos are neither illegal in and of themselves nor universally used for illegal purposes. So that observation isn't particularly significant in establishing probable cause. Moreover, the actual number of cigarillos isn't quantified in any way, making the assertion more of an opinion or conclusion than a fact. The judge reviewing the application had no way of knowing whether the individual bought a dozen cigarillos or a hundred. See *Gates*, 462 U.S. at 239 ("Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others."). Finally, of course, the tip from Giles was more than 4 months old when the district court considered the warrant application, substantially diminishing whatever significance the information originally might have had.

The second paragraph describes the results of a trash pull officers conducted 2 days before submitting the application for the warrant to search Baskas' house. According to the application, the contents of "several bags of trash" included torn plastic sandwich bags, loose tobacco, cigar packs, and an unquantified amount of "green leafy vegetation" that appeared to be marijuana. Those assertions indicate unlawful activity, most obviously possession of marijuana (likely with the intent to distribute) and possession of drug paraphernalia.

But the application fails to present sufficient information to establish where that unlawful activity might be taking place or, more precisely, that it was taking place in Baskas' house. The only facts recited in the application linking the contraband to the house established that the officers found the trash bags at the curb in front of the house. Nothing in the applications shows a tighter connection, such as discarded mail for that address in the trash. The location of the trash bags, which are distinctly portable objects

7

easily moved from place to place, fails to forge a sufficient legal connection between the contents and the nearest residence to support a search warrant.

In this respect, *Hicks* is especially instructive. 282 Kan. at 616-17. In *Hicks*, the court found that evidence of illegal drugs recovered in two trash pulls done in successive weeks did not bolster probable cause to search a nearby house because the application contained nothing to connect the trash bags to the house. The application, like the one here, neither identified items in the trash bearing the address of the house to be searched nor reliable observations showing that a resident of the house had deposited the bags where the law enforcement officers confiscated them. 282 Kan. at 616-17. The court discounted the trash pulls because "some evidence establishing a nexus between drug evidence discovered in a garbage bag and a residence to be searched is necessary to support the conclusion that the drug evidence came from the home." 282 Kan. at 617.

The legal profession has appropriated the word "nexus" to denote a connection or relationship of some sort without really imputing much more about the character of the linkage in terms of proximity, duration, or other measures of strength. Nexus has been routinely used in Fourth Amendment cases to define the constitutional link that must be forged between the facts presented about the existence of evidence of a crime and the facts presented about the location of that evidence to secure a search warrant. See, *e.g.*, *State v. Bottom*, 40 Kan. App. 2d 155, 165, 190 P.3d 283 (2008) ("[T]he trial court must ultimately find a nexus between the place to be searched, the property to be seized, and the criminal conduct."); *United States v. Skarda*, 845 F.3d 370, 376 (8th Cir. 2016) ("[P]robable cause requires 'evidence of a nexus between the contraband and the place to be searched.'") (quoting *United States v. Tellez*, 217 F.3d 547, 550 [8th Cir. 2000]); *United States v. Abernathy*, 843 F.3d 243, 252-53 (6th Cir. 2016).

Consistent with *Hicks*, other courts have recognized the link for trash pulls requires more than law enforcement officers simply confiscating garbage containing

8

contraband from the curb near the house they want to search. See, *e.g.*, *United States v. Montieth*, 662 F.3d 660, 664-65 (4th Cir. 2011) (marijuana and plastic sandwich bags recovered in trash pull along with mail to residential address provided probable cause for warrant to search residence); *United States v. Crawford*, 552 Fed. Appx. 240, 247 (4th Cir. 2014) (mail found in trash pull "established nexus" between contraband in trash and place to be searched); *United States v. Akel*, 337 Fed. Appx. 843, 858 (11th Cir. 2009); *United States v. Vernon*, 2013 WL 1775065, at *1-3 (M.D. Fla. 2013); *United States v. Washington*, 2012 WL 3638227, at *6 (E.D. Cal. 2012). As the cases indicate, the connection is commonly made through mail or other documents found in the trash bearing the address of the place to be searched—hardly a new or innovative concept in Fourth Amendment law. See *California v. Rooney*, 483 U.S. 307, 309, 107 S. Ct. 2852, 97 L. Ed. 2d 258 (1987); *United States v. Segura-Baltazar*, 448 F.3d 1281, 1289 n.3 (11th Cir. 2006); *United States v. Coleman*, 149 F.3d 674, 677-78 (7th Cir. 1998); *State v. Davis*, 288 Ga. App. 164, 165, 653 S.E.2d 311 (2007); *Mast v. State*, 809 N.E.2d 415, 421 (Ind. App. 2004); *State v. Duchene*, 624 N.W.2d 668, 672-73 (N.D. Sup. Ct. 2001). As the court pointed out in *Baskas I*, the United States Supreme Court held in *California v. Greenwood*, 486 U.S. 35, 40-41, 108 S. Ct. 1625, 100 L. Ed. 2d 30 (1988), that government agents may seize trash put out for collection in unsecured containers, such as plastic bags, without a warrant or probable cause because citizens retain no protected Fourth Amendment interest—a recognized expectation of privacy—in property they have effectively ceded to any passerby. *Baskas I*, 2014 WL 3843088, at *7. The *Greenwood* decision, then, lent constitutional support to trash pulls as a means of investigating criminal activity, although the practice had already been in use for some time. *Greenwood*, 486 U.S. at 41-43 (cataloging state and federal decisions finding no Fourth Amendment protection for trash placed out for collection or otherwise discarded).

Given the widespread use of trash pulls, especially as a means of obtaining information to support search warrants, and the abundant caselaw outlining the requisite probable cause for those warrants, such as *Hicks*, we conclude that a reasonably trained

law enforcement officer would in 2011 understand the need for some factual nexus in a warrant application tying the recited criminal activity to the place to be searched for contraband or other evidence. Accordingly, that law enforcement officer ought to recognize an application and search warrant devoid of those connective facts to be patently deficient, even if a judge were to review the application and approve the warrant. As we have said, the Fourth Amendment requires the place to be searched to be identified specifically and the reason why—the facts establishing probable cause—to be presented to a judicial officer for review. Those are both elemental and elementary requirements of a reasonable search comporting with the Fourth Amendment.

In this case, the application for the warrant lacked any factual representations connecting the marijuana and other contraband found in the trash to Baskas' house. The omission cuts to the very purpose of the warrant requirement. The failure to include such information in the application betrays a basic misunderstanding of what a law enforcement officer must present to a judge to obtain a search warrant. This case does not involve some fine-spun distinction of Fourth Amendment law or a quarrel about the sufficiency of the facts presented to the district court to demonstrate nexus. It rises—and falls—on the absence of any such facts. Accordingly, the good-faith exception is inapplicable to salvage the search of Baskas' home.

In turn, that requires Baskas' motion to suppress be granted and the exclusionary rule applied to the evidence law enforcement officers seized from his home. The result is consistent with the purpose of the exclusionary rule in deterring police conduct that either is intentional or results from "recurring or systemic negligence" and compromises Fourth Amendment rights. See *Herring v. United States*, 555 U.S. 135, 144, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009); *Althaus*, 49 Kan. App. 2d at 231. A law enforcement officer relying on an application and search warrant like the ones here necessarily would be either ill-trained or acting in disregard of his or her training. To protect the constitutional integrity of future searches, the law enforcement agency, then, ought to be prompted to provide

better training or to demand more rigorous adherence to the training it already provides. The incentive necessarily comes at the price exacted by the exclusionary rule in this case but also spurs adherence to the Fourth Amendment in future searches and future cases.

We reverse the ruling of the district court and find that the good-faith exception to the exclusionary rule should not be applied here. Accordingly, as set out in *Baskas I*, the case is remanded to the district court with directions to set aside Baskas' convictions and sentence, to grant his motion to suppress, and to otherwise proceed in a manner consistent with this opinion.